UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| GABRIEL HAYES | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CV410-227 |
| | ) | CR409-141 |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Gabriel Hayes moves this Court for 28 U.S.C. § 2255 relief. CR409-141, doc. 30 (§ 2255 motion). Convicted and sentenced to 92 months for violating 18 U.S.C. § 922(g)(1), doc. 29, he claims he wanted to appeal but his appointed counsel, Arthur L. Cooper, failed to file one. Under penalty of perjury he claims he "expressly advised [Cooper] that he was dissatisfied with the sentencing proceeding and that he specifically wanted to have an appeal filed." Doc. 32 at 4; *id.* at 7 ("Verification").

Hence, he contends that Cooper provided him with ineffective assistance of counsel (IAC) in failing to appeal as requested. *Id.* He thus would like to take that direct appeal, though he does not say what issue he would raise other than his general dissatisfaction with his sentence.

The government insists he waived his right to a direct and collateral appeal, so his § 2255 motion should be denied. Doc. 44.

## I. BACKGROUND[1]

Indicted for violating 18 U.S.C. § 922(g)(1), Hayes faced a 120-month sentencing exposure. Docs. 1 & 2. The Court appointed Cooper to represent him. Doc. 8. Cooper negotiated a plea bargain: The government would not object to a sentence reduction if Hayes accepted responsibility (pled guilty). Doc. 27 at 2. Hayes, in return, would waive his direct and collateral appeal rights:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the Defendant may file a direct appeal of his sentence *if* it exceeds the statutory maximum; and the Defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the Defendant may also file a direct appeal of the sentence.

---

[1] On August 2, 2011, the Court held an evidentiary hearing on Hayes's § 2255 motion. Doc. 45. Some of the facts here are drawn from that hearing, which has not yet been transcribed.

2

Doc. 27 at 5-6 (emphasis added). At the Fed. R. Crim. P. 11 plea hearing, the prosecutor read the above-excerpted waiver out loud:

THE COURT: Is that a fair summary, Mr. Cooper, of what --

MR. COOPER: My understanding, Your Honor, yes, sir.

Q. Do you understand what he said, Mr. Hayes?

A. Yes, sir.

Q. Now I have talked to you very briefly about people who appeal and file motions. One of the frequent confrontations that occur is that people get to prison, and they talk to other inmates, and they say, well, your lawyer didn't do something. So they file what is called a collateral attack, that somebody mistreated them, or did not give them the rights to which they were due, such as the lawyer.

By your waiver of appeal, you may not attack this conviction in any way whatsoever, or the service that Mr. Cooper has rendered for you. You understand that now?

A. Yes, sir.

Q. Did you understand that when you signed this agreement?

A. Yes, sir.

Q. Mr. Cooper reviewed this at length.

A. Yes, sir.

Q. All right. Now, do you have any promises from anybody that are not in that written agreement?

A. No, sir.

> Q. Have you answered truthfully every question that I have asked of you here today?
>
> A. Yes, sir.

Doc. 36 at 30-31. At the § 2255 evidentiary hearing, both the government and then the Court reviewed this colloquy with Hayes, who reaffirmed that at the time he signed the plea agreement he then understood that he was waiving his direct and collateral appeal rights.

Hayes insisted, however, that he did not "*fully* understand." So the government asked him:

> Q. But you understood that you could not appeal if [the sentencing judge] sentenced you within your guidelines range for a term of imprisonment, right?
>
> A. Yes, sir.
>
> Q. You did understand that.
>
> A. Yes, sir.
>
> Q. And, in fact, [the judge] sentenced you within your guidelines range, right?
>
> A. Yes, sir.

August 2, 2011 Tr.

This Court then line-by-line reviewed with Hayes the above-excerpted, Rule 11 colloquy, and focused on the appeal waiver and

Hayes's sentence within the guidelines range. It re-read to him his repeated "Yes, sir" responses to the sentencing judge's repeated questioning whether Hayes understood what the appellate waiver meant. Hayes did not deny any of this, but reiterated, simply, that he was "dissatisfied with [Cooper's] services."

In sentencing Hayes to 92 months, doc. 29, the sentencing judge paused to note that he would have imposed 120 instead of 92 months *but for* the waiver. Doc. 37 at 37-38.[2] About one year later -- and evidently mindful of § 2255(f)'s one-year limitations period for filing § 2225 motions -- Hayes wrote Cooper asking about his appeal, but in it he never did express that he in fact had asked Cooper to take an appeal. Doc. 45-1 at 61. Cooper wrote back. Doc. 45-1 at 1. In pertinent part:

> I was surprised that you wrote me since I have not heard from you in almost a year. Please be advised that # 1 your plea agreement states that you waived any appeal in sentencing unless the court sentences you above the maximum time for the crime committed which is 10 years or # 2 the court sentences you outside the guideline range. This was explained to you at length and not only did you indicate you understood this part of your plea agreement, you also initialed it.

---

[2] "Now, except for the fact that he waived an appeal, I would have gone to the maximum in this case, because I think I have a duty [overarching] to protect the public. [¶] Pursuant to the Sentencing Reform Act of 1984 -- and I don't mean just to the end of the guidelines, but the end of the statutory cap." Doc. 37 at 37-38.

5

Since neither of these exceptions occurred you have no appeal.

Doc. 45-1 at 1.

Cooper did not reference any request by Hayes to take an appeal. As the government pointed out at the § 2255 evidentiary hearing, however, there was no need to, for Hayes did not claim that in his letter to counsel. Cooper testified that Hayes never asked him to appeal, though he knew Hayes was very unhappy with the sentence he received. Hayes filed the instant § 2255 motion shortly thereafter. At the § 2255 hearing, however, Hayes did not dispute any part of Cooper's letter. Doc. 30.

## II. GOVERNING STANDARDS

In *Pinckney v. United States*, 2010 WL 5497793 (S.D. Ga. Dec. 3, 2010), this Court noted the troubling number of IAC-based, lost-appeal challenges before it. *Id.* at * 1 n. 1 (collecting cases), *adopted*, 2011 WL 27480 (S.D. Ga. Jan. 3, 2011). To address it a judge on this Court "created a 'Notice Of Counsel's Post-Conviction Obligations,' to be furnished to counsel and client immediately after each conviction. That Notice requires both attorney and client to consult about the defendant's

appellate rights, then execute and file the Notice (memorializing that consultation and the defendant's decision)." *Id.* (cite omitted).

That Notice was not used here, where Cooper testified that in over three decades of practice he has never suffered an IAC claim. In any event the Court begins with the general ineffective IAC standards. The Sixth Amendment guaranteed Hayes the right to "reasonably effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). But Hayes "must show (1) that counsel's representation 'fell below an objective standard of reasonableness,'. . . and (2) that counsel's deficient performance prejudiced the defendant. . . ." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (*quoting Strickland*, 466 U.S. at 688). *Flores–Ortega* applies the *Strickland* framework

> for evaluating a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. *Id.* at 477. Of course, an attorney who disregards his client's specific instructions to file an appeal "acts in a manner that is professionally unreasonable." *Id.* (citations omitted). Conversely, an attorney who follows his client's explicit instructions not to file an appeal cannot be said to perform deficiently. *Id.*

*Green v. United States*, 2011 WL 1897189 at * 3 (S.D. Ga. May 18, 2011). Where, as the Court finds the case to be here, the client in fact did *not*

7

ask his counsel to file an appeal but later claims he *expected* his attorney to do so, the Court applies a "middle ground":

> *Flores–Ortega* addressed the middle ground between these poles, *i.e.*, whether an attorney is "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other." *Id*. While the Supreme Court did not doubt that the "better practice" is for counsel routinely to consult with his client about an appeal, *id*. at 479, the Court declined to hold "as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id*. (emphasis in original). Instead, where a defendant has not specifically instructed his attorney to file an appeal, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal *when there is reason to think* either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

*Id.* (emphasis added; footnote omitted). An appellate-waiver is a factor in deciding whether a rational defendant would want to appeal:

> Factors that help us determine whether a rational defendant would want to appeal include whether there are nonfrivolous grounds for appeal, whether the conviction follows a guilty plea, whether the defendant received the sentence she bargained for, and whether the plea agreement *waived appellate rights*. *Flores–Ortega*, 528 U.S. at 480, 120 S.Ct. 1029; *see also Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) (per curiam).

*Speight v. United States*, 2011 WL 1990665 at * 1 (11th Cir. May 23, 2011) (emphasis added).

8

## III. ANALYSIS

The Court finds that Hayes did not "reasonably demonstrate[] to counsel that he was interested in appealing." *Id.* And it disbelieves Hayes's written (in his brief) and oral (at the § 2255 evidentiary hearing) assertions that he at any time asked Cooper to file an appeal. Doc. 32 at 4. *See United States v. Daniels*, 2011 WL 3207052 at * 9 (E.D. Va. Jul. 26, 2011) ("Having weighed the credibility of the witnesses and having considered the evidence before the Court, the Court finds that [movant] did not instruct [his counsel] to file an appeal.").

The Court also finds that Hayes *fully* understood he was waiving his direct and collateral appeal rights, and simply did what the Rule 11 judge anticipated: He got to prison and, before the one-year limitations period expired, decided it would cost nothing to file a § 2255 motion and rest on a generalized "I'm dissatisfied with my sentence" claim. And that he did. But in the meantime, there was no reason for Cooper to think that Hayes wanted to appeal. In fact, there was every reason for him to think not.

Indeed, Hayes himself supplies no reason for why it would be rational for *any* attorney to do so. At the § 2255 evidentiary hearing, he

9

reaffirmed that when he pled guilty he understood that he was *waiving* his right to directly *and* collaterally appeal. That includes, as the Rule 11 judge illuminated for him, any challenge to *Cooper's* performance:

> Q. Now I have talked to you very briefly about people who appeal and file motions. One of the frequent confrontations that occur is that people get to prison, and they talk to other inmates, and they say, well, your lawyer didn't do something. So they file what is called a collateral attack, that somebody mistreated them, or did not give them the rights to which they were due, such as the lawyer.
>
> By your waiver of appeal, you may not attack this conviction in any way whatsoever, *or the service that Mr. Cooper has rendered for you.* You understand that now?
>
> A. Yes, sir.

Doc. 36 at 30-31 (emphasis added); *see Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) ("[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. . . . [A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.").

For that matter, Hayes does not even say what it is he would appeal, other than his general dissatisfaction with his sentence:[3] at the § 2255 hearing, Cooper related that Hayes had originally been before the state court on related charges, and had worked out a one-year plea there, before the state district attorney handed this case over to federal prosecutors; Hayes was thus very dissatisfied with his 92 month sentence. Nor, as the government pointed out at the evidentiary hearing, did Hayes even raise as a § 2255 issue Cooper's "duty to consult"[4] Hayes about whether wanted to file a direct appeal.

---

[3] *Speight* also considered, as part of such inquiry, whether any nonfrivolous grounds would have existed for such an appeal. *Speight*, 2011 WL 1990665 at * 2 (Speight was prejudiced, as element of her IAC claim, as a result of counsel failing to consult with her regarding an appeal of her convictions and her 819-month sentence; had her counsel consulted adequately with her about an appeal, there was a reasonable probability that she would have appealed, given that she had nonfrivolous grounds for appeal, and she and her family expressed dissatisfaction with what they perceived as a lengthy sentence). Hayes points to *no* nonfrivolous grounds here. And simply being "dissatisfied" with one's sentence is a *baseless* appellate ground.

[4] Note that

> "[c]onsult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." [*Flores–Ortega*, 528 U.S.] at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id*. If the defendant pled guilty, the court should consider whether the defendant received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. *Id*.

Hayes therefore has not met the *Flores–Ortega* evidentiary bar here. Thus, he is not entitled to § 2255 relief, so his § 2255 motion must be **DENIED**. And in light of this result, it is not necessary to reach the government's remaining (appellate-waiver-based) arguments.

But it is necessary to note that it cost Hayes nothing to put the government and the Court to the expense of holding an evidentiary hearing and all of its related expenses (appointing and paying § 2255 counsel to represent him, inmate-transport costs, court time, attorney time, transcript costs, briefing costs, etc.) for a *completely baseless* § 2255 motion.[5] The government invokes no Fed. R. Civ. P. 11 or other form of

---

*United States v. Daniels*, 2011 WL 3207052 at * 9 (E.D. Va. Jul. 26, 2011). Here there is no question that Hayes received a sentence in the range that he bargained for, and he *did* waive *all* rights to appeal in his plea agreement.

[5] It is not difficult to estimate that § 2255 motions like this cost the taxpayers $10,000 or more, and in a time of record national debt. Too, the allegedly ineffective defense attorney goes uncompensated for his time in having to testify about a matter he reasonably thought had long been put to bed. At the § 2255 hearing in this case government counsel could recall no "lost-appeal" cases where the aforementioned "Notice Of Counsel's Post-Conviction Obligations" has been used.

It thus behooves the bench, bar and government to ensure that it be used in every criminal case. *See Baughman v. United States*, 2008 WL 3861991 at * 4-5 (S.D. Ga. Aug. 18, 2011) (copy of suggested form). To head off bogus, post-Notice claims that defendants "changed their mind" and later "sent a letter" to their lawyer requesting an appeal within Fed. R.App. P. 4(b)(1)(A)'s 14-day period, sentencing judges can hand the Notice to each defendant after sentencing and instruct him, on the record, to (a) timely complete the "Notice" with his counsel and file it; and (b) immediately file with the Court a copy of any post-Notice, change-of-mind request for their counsel to file an appeal. An executed copy of the Notice with no follow-up filing

sanction in an area where penal (for perjury)[6] and repetitive-filing sanctions[7] are imposed. Hayes, nevertheless, is forewarned that he will face filing sanctions if he re-presents this claim absent any new evidence or intervening change in the law.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1);

---

from the defendant can then be accepted as prima facie evidence that the defendant elected to take no appeal. Verified claims to the contrary would then face investigation and prosecution if found to be perjuriously made. *See infra* n. 6.

[6] Whether in a witness chair before this Court or while crafting court filings in a prison cell, *no one* (especially a *convicted criminal*) is permitted to lie to or otherwise knowingly mislead this Court. All must swear to any facts advanced in quest of judicial relief, and thus be subject to criminal prosecution if they commit perjury, or submit a false declaration in violation of 18 U.S.C. § 1623(a). *See, e.g., United States v. Dickerson*, CR608-36, doc. 47 (S.D. Ga. Dec. 11, 2008) (convicted of violating 18 U.S.C. § 1623(a) while seeking 28 U.S.C. § 2255 relief); *aff'd*, 2010 WL 4409382 (11th Cir. Nov. 8, 2010), *cited in Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009).

[7] *See Shivers v. United States*, 2011 WL 1935543 at * 3 (11th Cir. May 20, 2011) (sanctions imposed by district court on vexatious § 2255 litigant were necessary and prudent to curb conduct that had impaired the rights of other litigants and court); *see also United States v. Perkins,* 2011 WL 1770852 at * 2 (5th Cir. May 4, 2011) (sanctioning forewarned, serially filing federal inmate "$455, payable to the clerk of this court," and until he paid it he could file no more pleadings of any kind challenging his conviction); *Mitchell v. Pearson*, 390 F. App'x 407, 408 (5th Cir. 2010) (after affirming the denial of a baseless 28 U.S.C. § 2241 petition filed by movant who failed to show why § 2255 was not an adequate remedy, court cautioned movant that he would face sanctions, including "monetary sanctions," for "any future frivolous, repetitive, or otherwise abusive filings. . . .").

13

*see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

Meanwhile, the Court **GRANTS** the government's unopposed motion to amend its response. Doc. 44.

**SO REPORTED AND RECOMMENDED** this <u>9th</u> day of August, 2011.

_____<br>
UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT OF GEORGIA